## NEFF v. UNITED STATES.
### No. 11384.

Circuit Court of Appeals, Eighth Circuit.
Aug. 1, 1939.

G. P. Linville, of Cedar Rapids, Iowa, for appellant.

William B. Danforth, Asst. U. S. Atty., of Mason City, Iowa (Edward G. Dunn, U. S. Atty., of Mason City, Iowa, on the brief), for the United States.

Before GARDNER and THOMAS, Circuit Judges, and WYMAN, District Judge.

WYMAN, District Judge.

The appellant, Claire R. Neff, was convicted under count one of an indictment which charged him with a violation of Sec. 398, Title 18 U.S.C.A., commonly known as the Mann Act, and brings the case to this court by appeal from the judgment entered upon such conviction. For the sake of convenience the parties will be hereinafter referred to as plaintiff and defendant, as in the court below.

The appeal is based upon alleged error on the part of the trial court in the admission, over timely objections by the defendant, of certain evidence as to the appearance of the prosecuting witness and the condition of her clothing some hours subsequent to the commission of the offense, and certain other evidence tending to show that the defendant had upon two other occasions attempted to induce other girls to indulge in sexual intercourse with him.

The evidence presented on the part of the plaintiff was to the effect that the prosecuting witness, Bettie Hanson, first saw the defendant, Neff, driving an automobile on the streets of Decorah, Iowa, at about 4:30 or 5 o'clock on the afternoon of

February 17th, 1938; that later the same day she saw him again and had some conversation with him at Decorah, Iowa, at which time he took her into his automobile and drove to a picnic ground in the state of Iowa some few miles from the city of Decorah; that the parties stayed at the picnic ground for some time and during that trip and while at the picnic ground the defendant repeatedly attempted to induce the prosecuting witness to submit to sexual intercourse with him, but, without success; that upon leaving the picnic ground the defendant turned his car north on Highway 52 and drove to Rochester, in the state of Minnesota, and that at some point on Highway 52, after the car had turned north (whether it was in the state of Iowa or the state of Minnesota does not appear), the defendant told the prosecuting witness that he was going to have sexual intercourse with her; that they arrived at Rochester, Minnesota, about 8:30 o'clock in the evening of February 17th, 1938, and drove in the city and its vicinity until about 2 o'clock in the morning of February 18th; that during the time said parties were in Rochester, Minnesota, the defendant, upon several occasions, left the said Bettie Hanson alone in the car while he went into a night club, a filling station, and the Kahler Hotel, and while they were driving in and about the city of Rochester the defendant repeatedly endeavored to induce the said Bettie Hanson to submit to sexual intercourse with him, but without avail; that on the way from Rochester back to Decorah, Iowa, at some time subsequent to the hour of 2 o'clock in the morning of February 18th, 1938, at a point on Highway 52, about three miles from the town of Marion, Minnesota, the defendant and the prosecuting witness, Bettie Hanson, indulged in the act of sexual intercourse; that he then drove the automobile to a point about two miles north of Decorah, Iowa, where Bettie Hanson left the car and walked to the home of Dolores Fagerlie, one of her girl friends in the city of Decorah, where she arrived between 8 and 8:30 o'clock on the morning of February 18th, 1938. As a part of her direct examination the prosecuting witness, without objection on the part of the defendant, made the following statement: "When I arrived in Decorah I was nervous, upset and tired; there was several buttons off at my neck; where the skirt was sewed on the waist was ripped and my belt buckle was broken, and I had a couple of runs in my stockings."

As a part of its main case the plaintiff called Dolores Fagerlie as a witness and over the objection of the defendant, she was permitted to testify as to the appearance of the prosecuting witness and the condition of her clothing upon her arrival at the home of the said Dolores Fagerlie on the morning of February 18th, and the same witness was permitted to testify, over timely objection, as to the details of an experience which she had with the defendant at about the middle of December, 1937, when, according to her testimony, he induced her to get into the automobile at Decorah, Iowa, and drove to a point in the same state near the village of Spillville, where he attempted to induce her to have sexual intercourse with him.

Gladys Arneson, another witness for the plaintiff, was also, over objection by the defendant, permitted to relate the details of an occasion on the evening of February 18th, 1938, when the defendant, according to her testimony, took her in his automobile from the city of Decorah, Iowa, to a point in the same state, a few miles distant, where he attempted to induce her to submit to sexual intercourse with him.

The defendant contends that the admission of this testimony as to the appearance of the prosecuting witness and the condition of her clothing, as well as the testimony of Dolores Fagerlie and Gladys Arneson as to the occasions when the defendant made improper advances and took undue liberties with each of them, was prejudicial error. On the other hand, it is the contention of the plaintiff that the testimony of Dolores Fagerlie as to the appearance of the prosecuting witness and the condition of her clothing was competent as corroborating the story of the prosecuting witness, and that the testimony of the witnesses Fagerlie and Arneson as to the defendant's improper conduct with each of them was competent evidence as bearing upon the intent of the defendant, and that it was properly admitted for that purpose only by the Court.

So far as the testimony of the witness, Dolores Fagerlie, relating to the appearance of the prosecuting witness and the condition of her clothing is concerned, it is, of course, well settled that when the

charge is that of rape, or any other offense involving assault, evidence as to the physical appearance and condition of the prosecuting witness within a reasonable time after the commission of the offense is ordinarily regarded as admissible as tending to corroborate the testimony as to the assault. It is true that this is not an assault case. The gist or gravamen of the offense with which the defendant was charged is the interstate transportation of a female for immoral purposes, and the offense is complete the moment the female has been transported across the state line with the immoral purpose or intent in the mind of the person responsible for her transportation. The immoral conduct and relations of the parties are, of course, in no sense elements of the offense charged, but evidence of improper conduct and immoral relations between the parties, within a reasonable time before and after the transportation, is admissible as bearing upon the purpose and intent with which the interstate transportation was undertaken. The testimony of Dolores Fagerlie as to the appearance of the prosecuting witness and the condition of her clothing on the morning of February 18th, within a few hours at most of the time when she parted company with the defendant, would tend to corroborate the story of the prosecuting witness as to being out all night with the defendant and as to her improper relations with him and would, therefore, be admissible as bearing upon his immoral purpose and intent. The prosecuting witness, without objection, was permitted to testify as to practically the same facts, and in view of this fact, we fail to see how the testimony of Dolores Fagerlie could in any way prejudice the defendant.

The testimony of Dolores Fagerlie and Gladys Arneson as to the defendant's immoral conduct with each of them was admitted by the trial court over the objection of the defendant as bearing upon the intent of the defendant in transporting the prosecuting witness into the state of Minnesota, and the Court was careful to limit the effect of the testimony to that purpose alone. Referring to this testimony in the instructions to the jury, the Court used the following language: "Evidence has also been offered by the Government for the purpose of establishing the intent with which the defendant took this girl across the State line into the State of Minnesota, if he did so take her. I refer to the testimony of one or two other young girl witnesses, who testified to other occurrences with the defendant. That, gentlemen, may be considered by you, and if, under all of the evidence, you find beyond a reasonable doubt that defendant did take and transport the witness Bettie Jane Hanson into the State of Minnesota, you may consider that evidence for the purpose of throwing light upon the purpose and intent with which he took this girl there. That is not evidence, however; those circumstances testified to by those other two girls would not be evidence tending to show that he did take Bettie Jane Hanson from the State of Iowa to the State of Minnesota, but only for the purpose of tending to establish the intent or purpose of taking her there, if you find he did so take her."

The rule against the use of evidence tending to show the commission of distinct and separate crimes other than the one constituting the charge on trial is universally accepted and adhered to, and the evidence of these two witnesses as to defendant's improper conduct with them was admitted by the Court upon the theory that under the facts and circumstances of the case the challenged evidence came within a well recognized exception to the rule above referred to. This exception is well stated in Jones on Evidence, 1913 Ed., p. 144; Hall v. U. S., 9 Cir., 235 F. 869, 870: "The intent and disposition with which one does a particular act must be ascertained from his acts and declarations before and at the time; and when a previous act indicates an existing purpose, which from known rules of human conduct may fairly be presumed to continue and control the defendant in the doing of the act in question, it is admissible in evidence. In many cases it is the only way in which criminal intent can be proved; and the evidence is not to be rejected because it might also prove another crime against the defendant. The practical limit to its admission is that it must be sufficiently significant in character, and sufficiently near in point of time, to afford a presumption that the element sought to be established existed at the time of the commission of the offense charged. The limit is largely in the discretion of the judge."

To come within the exception the act or offense testified to must be similar in character to, and closely connected with, the offense charged.

"There must appear, between the extraneous crime offered in evidence and the crime of which the defendant is accused, some other real connection, beyond the allegation that they have both sprung from the same vicious disposition." State v. Raymond, 53 N.J.L. 260, 21 A. 328, 330; Chitwood v. United States, 8 Cir., 153 F. 551, 11 Ann.Cas. 814; Prettyman et al. v. United States, 6 Cir., 180 F. 30; Colt v. United States, 8 Cir., 190 F. 305; Minner v. United States, 10 Cir., 57 F.2d 506.

In Fish v. United States, 215 F. 544, 551, L.R.A.1915A, 809, the Circuit Court of Appeals for the First Circuit uses the following language: "While there are exceptions to the general rule—that on the trial of a person for one crime evidence that he has been guilty of other crimes is irrelevant—it is not to be understood that any of the exceptions, when rightly applied, go to the extent of sanctioning the idea that a defendant's propensity to commit crime or to commit crimes of the same sort as the one charged, can be put in evidence to prove him guilty of the particular offense; and that to come within the exceptions there must be some other real connection between the extraneous crime and the crime charged."

In Tinsley v. United States, 43 F.2d 890, 893, the Circuit Court of Appeals for this circuit stated the rule as follows:

"The law is well settled as to the introduction of evidence of other offenses in the trial of a criminal case, and this court has many times expressed itself thereon. If no question of a defendant's intent is involved, unless there is some connection between such offenses and those charged, it is manifestly unfair and unjust that evidence of like offenses to those charged in the indictment should be introduced. * * *

"The question of intent is in this case. Each of the first seven counts of the indictment charges the taking and purloining of horses with intent to deprive the owners of their property. It was necessary to show that the purchase of the horses by Tinsley for the larceny of which he is charged was not a mistake and was not in good faith. Therefore the evidence of other similar larcenies was admissible as bearing on the question of intent. * * *"

It cannot, of course, be logically contended that the acts testified to by Dolores Fagerlie and Gladys Arneson are in any way connected with or related to the offense charged, but the vital question in the case is the purpose and intent with which the interstate transportation was made and the challenged testimony, indicating, as it clearly does, defendant's unclean attitude towards young girls of high school age, might reasonably be regarded as admissible as tending to show a present and continuing immoral purpose as to females of this class, and a promiscuous disregard of their chastity and virtue which, if established, would have a direct bearing upon the purpose and intent with which the interstate transportation was made.

 Questions as to the admissibility of this class of evidence are within the wise discretion of the trial court and its rulings as to the same should not be interfered with by a reviewing court unless it is clear that the questioned evidence has no connection or bearing upon any of the issues involved in the charge. In view of the facts and circumstances disclosed by the record in this case, and the clear and unambiguous instructions of the trial court as to the limited purpose of the evidence, and restricting its effect solely to the question of intent, in our opinion, there was no abuse of discretion on the part of the trial court in the admission of the challenged testimony.

It follows, therefore, that, in our opinion, the judgment appealed from should be affirmed, and it is so ordered.